(67 South. 895)

No. 20180.

F. W. HEITMANN CO. v. KANSAS CITY SOUTHERN RY. CO.

(Feb. 23, 1915. Rehearing Denied March 22, 1915.)

*(Syllabus by Editorial Staff.)*

1. CONTRACTS ⬤⟿238—BILL OF LADING—ORAL MODIFICATION—VALIDITY.
    A bill of lading may be modified by subsequent oral agreement whereby the consignor, entitled to receive the goods, directed delivery to a third person.
    [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1117, 1123; Dec. Dig. ⬤⟿238.]

2. GUARANTY ⬤⟿7 — WRITTEN GUARANTY — CONSTRUCTION.
    Where a consignor notified the carrier of his intention to hold it liable under the bill of lading for a delivery of the goods to a third person, instead of the consignor, to whom the goods were consigned, a reply by the carrier, wherein it advised that the consignor should proceed against the person receiving the goods for the amount due thereon, and that it guaranteed costs and attorney's fees, was an unqualified authorization to the consignor to bring the action, and a promise to pay the costs and attorney's fees, and notice by the consignor of acceptance was unnecessary.
    [Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 9; Dec. Dig. ⬤⟿7.]

Monroe, J., dissenting in part.

Appeal from First Judicial District Court, Parish of Caddo; T. F. Bell, Judge.

Action by the F. W. Heitmann Company against the Kansas City Southern Railway Company. From a judgment granting insufficient relief plaintiff appeals. Affirmed.

Herndon & Herndon, of Shreveport, for appellant. Alexander & Wilkinson, of Shreveport, for appellee.

PROVOSTY, J. On August 17, 1911, the plaintiff company, a business concern of Houston, Tex., but also doing business in Shreveport, La., through an agent named Walker Ellis, sold, at Shreveport, through this agent, to the Wylie Drilling Company, a business concern in Shreveport, two car loads of piping, to be delivered at Oil City. It consigned the two car loads, over the defendant's road, to itself at Oil City. The agent of the Wylie Drilling Company at Oil City, on receiving advice from his principal of the shipment having been made, applied to the defendant railroad company for delivery of the consignment, although not having the bill of lading. Delivery was refused him, in the absence of the bill of lading. He then communicated by phone with Mr. Walker Ellis, the agent of plaintiff, and, he says, was authorized by Ellis to obtain delivery of the goods, and was

informed that the bill of lading had been mailed to him. On his communicating to the agent of the defendant company the result of this phone conversation the goods were delivered to him. The bill of lading had not been mailed, but at the filing of this suit was still in the possession of plaintiff. Walker Ellis admits the conversation over the phone, but denies that he gave authority for the delivery of the goods. The trial court found that he had, and we have experienced no difficulty in reaching the same conclusion. At that time he was the Shreveport agent of both companies, and the only possible reason there could have been for his not consenting to give this authority would have been if the goods had had to be paid for on delivery; and this was not the case, for they were charged to open account, and thereafter several payments were made on this open account without any question whatever being raised in connection with the said delivery. This question began to be agitated only some three months later, after the Wylie Drilling Company had failed in business; repeated efforts having in the meantime been made to collect from that company the balance due on its said open account.

Plaintiff now sues the defendant railroad company on the bill of lading. We think the trial court properly rejected the demand.

[1] Plaintiff's learned counsel argue that the bill of lading is a written contract, the terms of which cannot be varied or contradicted by parol evidence, and that therefore this giving of authority to receive the goods could not be proved by parol. This is a non sequitur. While a written contract cannot be varied or contradicted by parol, there is nothing to prevent its being modified by a subsequent contract or agreement. 17 Cyc. 734. And that is, practically, what takes place when the person entitled under the bill of lading to receive delivery of the goods directs them to be delivered to some one else. A bill of lading may be controlled by subsequent communications. Mitchell v. Chesapeake & O. R. Co., 17 Ill. App. 231; Forrester v. Dodge, 12 Mass. 565. And inasmuch as no law requires the transactions between the consignor or the consignee of goods and the carrier to be in writing, there is nothing to prevent these subsequent communications from being verbal.

[2] The goods were bought by the Wylie Drilling Company for the use of the Irish Oil Company, and were turned over to and used by the latter company. When plaintiff notified the defendant company of the intention to hold it liable under the bill of lading, the defendant company, through its attorneys, with full reservation of its rights and defenses, wrote to the plaintiff company, as follows:

"We therefore advise and recommend that your company immediately take proceedings in the courts of Texas against the Irish Oil Company for the amount of said indebtedness, and we guarantee on behalf of the Kansas City Southern Railway Company to see that the costs and attorney's fees of such proceeding are paid by said railway company."

This suit, thus recommended, was brought, and resulted unsuccessfully; and plaintiff has included in the instant suit a demand for these costs.

Defendant, as reason for resisting the demand, says that this suggestion and recommendation that a suit be brought was a mere offer on its part to pay the costs of such a suit, and that no notification of the acceptance of this offer was ever given; that the first it knew of the acceptance was when, after the termination of the suit, it was called upon by plaintiff to pay these costs; that it then withdrew the offer, on the ground that, if it had known of said suit having been brought, it could have furnished plaintiff with information which would have enabled plaintiff to succeed in it.

The above transcribed letter was not a mere offer to enter into an agreement but, was a positive and unqualified authorization to plaintiff to bring the suit in question im-

mediately, and a promise to pay the costs thereof. The suit was brought for the benefit of the railway company. If viewed at all in the light of a guaranty, it was an absolute guaranty, not requiring notice. 20 Cyc. 1407; Civil Code, art. 1802. The doctrine of Lachman & Jacobi v. Block, 47 La. Ann. 505, 17 South. 153, 28 L. R. A. 255, has no application to such a case. We agree with the trial court in holding defendant liable for said costs. It is unfortunate that the plaintiff did not know of defendant's being possessed of information by which the result of the suit might have been different; but defendant made no mention in its said letter of its having such information, and plaintiff could not be expected to divine that it had.

Judgment affirmed.

MONROE, J., dissents, in so far as plaintiffs are awarded the costs and attorney's fees claimed by them; otherwise, he concurs.